* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Upon conclusion of its review, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the parties and subject matter of this claim. *Page 2 
2. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act in that defendant-employer regularly employed three or more employees at the relevant time in question.
3. An employer-employee relationship existed between defendant-employer and plaintiff on March 26, 1997, the admitted date of the accident.
4. Key Risk Insurance Company is the insurance carrier for said defendant-employer.
5. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment on March 26, 1997, resulting in the payment of temporary total disability and authorized medical care.
6. Plaintiff has an average weekly wage of $465.55, yielding a compensation rate of $310.38.
7. The parties stipulate that defendants voluntarily authorized plaintiff to proceed with the left-sided SI joint fusion with Dr. David Miller, thereby rendering moot defendants' appeal of the January 22, 2007 Order of Meredith Henderson, Special Deputy Commissioner.
 * * * * * * * * * * * EXHIBITS
The following documents were received into evidence:
1. All medical records, including those of the current authorized treating physician, David C. Miller, M.D. of Carolina Regional Orthopaedics;
2. NCIC Form 24 Application by defendants;
 3. NCIC Form 24 Response by plaintiff; *Page 3 
4. Administrative Decision and Order by Layla T. Santa Rosa, Special Deputy Commissioner filed January 10, 2006;
5. Plaintiff's Motion to Layla T. Santa Rosa, Special Deputy Commissioner requesting an Order requiring defendants to reinstate temporary total disability dated April 18, 2006;
6. Defendants' Response to Motion to Reinstate Compensation dated May 1, 2006;
7. Order denying plaintiff's Motion to Reinstate Compensation by Executive Secretary Tracey Weaver, filed May 31, 2006;
8. Defendants' Form 33 Request for Hearing dated June 2, 2006;
9. Plaintiff's Form 33 Request for Hearing dated June 9, 2006 appealing the Executive Secretary's Order dated May 31, 2006;
10. Plaintiff's letter to Claims Department attaching NCIC Form 28U requesting defendants reinstate temporary total disability dated September 8, 2006;
11. Order Filed November 22, 2006 by Executive Secretary Tracey Weaver ordering defendants to reinstate temporary total disability effective September 8, 2006 and ongoing;
12. Order by Executive Secretary Tracey Weaver filed February 6, 2007 denying defendants' motion for reconsideration and ordering defendants to immediately reinstate temporary total disability effective September 8, 2006 and ongoing;
13. VocMed, Inc. Rehabilitation Reports;
14. The VocMed, Inc. records pursuant to the pre-trial agreement are admitted into evidence. It is noted that plaintiff's counsel objects to opinions expressed by individuals in those records. The objection goes to the weight of the evidence.
 15. Plaintiff's Job Search Logs and Records of Job Search. *Page 4 
 * * * * * * * * * * * ISSUES
1. Whether plaintiff's temporary total disability benefits should be reinstated by defendants for any time period between January 24, 2006 to September 7, 2006?
2. To what further benefits is plaintiff entitled?
3. Whether any reinstatement of compensation should be a temporary reinstatement to extend only through the end of the healing period for plaintiff's left-sided joint fusion to be performed by Dr. Miller?
4. Whether plaintiff remains disabled as a result of the injury of March 26, 1997?
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 45 years of age. She had graduated from high school in 1981. Prior to working for defendant-employer, plaintiff worked for McDonald's as a cook and a cashier.
2. Plaintiff was employed with defendant-employer from approximately September 1993 until 1998. While employed with defendant-employer, plaintiff worked as a boat detailer, in the Mold Department building molds, and then in Service and Warranty. Plaintiff described both positions as physical and fast-paced. Plaintiff characterized all her work with defendant-employer as "physical" requiring her to manually perform the physical requirements of her job duties. *Page 5 
3. On March 26, 1997, plaintiff injured her back while at work with defendant-employer. Defendants accepted plaintiff's back claim as compensable. Plaintiff tried unsuccessfully to return to work and last worked for defendant-employer on June 15, 1999.
4. After plaintiff's employment with defendant-employer, plaintiff worked briefly for approximately two months at Pugh's before being taken completely out of work for surgery on October 20, 1999 by her then authorized treating physician, Dr. Doug Jones. Dr. Jones ultimately referred plaintiff to David C. Miller, M.D. of Carolina Regional Orthopaedics.
5. David C. Miller, M.D., an orthopedic surgeon, is plaintiff's authorized treating physician, who has been involved with plaintiff's treatment and care related to her accepted workers' compensation claim since an initial evaluation on September 26, 2001. Plaintiff underwent surgery by Dr. Miller on March 3, 2002, wherein he performed an authorized lumbar fusion at the lowest three levels, L3-4, L4-5 and L5-S1. Following the fusion, plaintiff underwent another authorized operation on March 26, 2003 by Dr. Miller to correct a pseudoarthrosis, or a lack of fusion from her first operation.
6. As a result of Dr. Miller's second operation, plaintiff experienced some improvement in her back pain and leg pain, but over the ensuing months and years, plaintiff developed pain over the sacroiliac joint regions. Dr. Miller performed a series of authorized sacroiliac joint injections. The injections provided only temporary relief of plaintiff's symptoms.
7. On December 1, 2004, Dr. Miller assigned plaintiff permanent work restrictions of sedentary work with no sitting greater than thirty minutes without a break, as well as no walking for more than thirty minutes without a break. He determined that plaintiff might require the use of assistive devices. He assigned a thirty percent (30%) permanent partial impairment *Page 6 
rating to plaintiff's back and released her to attempt sedentary work for an eight-hour day, with the understanding that plaintiff may not tolerate that many hours.
8. Following Dr. Miller's assignment of permanent sedentary work restrictions on December 1, 2004, defendants retained the services of VocMed, Inc. to assist with vocational rehabilitation. VocMed, Inc. and its vocational consultants initiated job searches with which plaintiff willingly cooperated. Thereafter, on November 17, 2005, defendants filed a Form 24 Application To Stop Payment of Compensation.
9. On November 30, 2005 plaintiff responded to defendants' filing and on December 30, 2005, Special Deputy Commissioner Layla T. Santa Rosa conducted an informal hearing. On January 10, 2006, the Special Deputy Commissioner filed an Order approving defendants' request to suspend compensation. The January 10, 2006 Administration Decision and Order stated in part, ". . .defendants are entitled to suspend plaintiff's ongoing temporary total disability compensation from November 17, 2005, the date on which the Form 24 Application was filed, until plaintiff demonstrates full compliance with vocational rehabilitation. Full compliance shall be demonstrated when plaintiff has successfully complied with vocational rehabilitation for two weeks, including successfully applying to all suitable job leads given to her by the vocational rehabilitation professional. After plaintiff has demonstrated full compliance, defendants shall reinstate benefits without further Motion of plaintiff." Further, the January 10, 2006 Administrative Decision and Order specifically states "the Vocational Rehabilitation Professional assigned to the matter, shall comply with the North Carolina Industrial Commission Rules for the Utilization of Rehabilitation Professionals in Workers' Compensation Claims, including ensuring that job leads given plaintiff are suitable based upon plaintiff's past work experience and restrictions in accordance with Rules III.G and VIII.B." *Page 7 
10. The January 10, 2006 Administrative Decision and Order was not appealed by plaintiff. Pursuant to the Order, defendants did suspend plaintiff's temporary total disability compensation on January 10, 2006. During the pendency of defendants' Form 24 Application filed on November 27, 2005, the informal hearing telephonic conference on December 30, 2005, and the Administrative Decision and Order filed on January 10, 2006, Vocational Consultant Cynthia Tyson at VocMed, Inc. along with defendants, recommended placement of plaintiff in Martin Enterprises, which is a vocational workshop. Dr. Miller approved plaintiff's participation in the workshop.
11. On December 28, 2005, plaintiff began attending Martin Enterprises where she glued paper on the bottom of foam trays, used for meat in grocery stores. Plaintiff satisfactorily participated in the workshop through completion of her term on February 21, 2006. While at Martin Enterprises, plaintiff primarily reported to Bobby Hyman, who was the Community Employment Specialist at Martin Enterprises. Plaintiff believed that Mr. Hyman had the authority to release her from her term at Martin Enterprises. Plaintiff testified that she believed she had completed her term at Martin Enterprises when Mr. Hyman told her she had. In addition, Mr. Hyman provided proof of plaintiff's completion with a December 28, 2005 letter he wrote indicating, "Terri Tyer completed time here at Martin Enterprises as of 2/21/06 with starting date of 12/28/05. If any additional information is needed please call me: Bobby E. Hyman @ 252.792.8291."
12. While plaintiff was working with Martin Enterprises, defendants required plaintiff to also continue to meet weekly with Cynthia Tyson, a rehabilitation consultant and pursue job leads. Plaintiff kept all her scheduled appointments. These meetings consisted of a weekly consultation that lasted for about 15 minutes. At these meetings, Ms. Tyson would provide *Page 8 
plaintiff with additional job leads for the next week. Ms. Tyson was not always prepared with leads at these scheduled meetings and would sometimes use JobLink's resources and the newspaper.
13. Plaintiff did apply for work and on January 18, 2006 attended an interview at Coordinated Health Services with Amy Smith. Coordinated Health Services works in the community with mental health patients. Plaintiff had contacted this employer in the past and she understood the job required going to patients' houses and helping with daily activities. In addition, plaintiff was made aware that some clients could fall, and she would have to help them up. The Full Commission finds that the position with Coordinated Health Services was not suitable employment in light of the restrictions assigned by Dr. Miller.
14. Amy Bell Smith has been an employee of Coordinated Health Services since October 1, 2001. At her deposition on September 7, 2007, Ms. Smith recalled an applicant in early 2005 named Terri Tyer. Ms. Smith testified she did remember plaintiff applying but did not remember dates. Ms. Smith recalled that plaintiff applied two times and applied for the position of a Habilitation Technician I. Ms. Smith testified that plaintiff did not participate beyond the initial interview stage. Ms. Smith recalled a telephone call from a lady who asked her if they were hiring, and that the caller was helping someone find work. She says that she allowed the lady to read a job description. Ms. Smith testified the job description did not have lifting requirements listed, and she could not remember whether or not this lady asked her whether the position was sedentary, light, or medium work. Ms. Smith stated it appeared the only information the lady trying to find a job for plaintiff wanted to know was whether her employer was hiring, whether a job was available, and whether someone with a high school diploma might be hired for the job. *Page 9 
15. Ms. Smith acknowledged that a job description she was asked to review was basically accurate regarding both the duties and the physical requirements of a Community Support Specialist or Paraprofessional, the same type of position as the Habilitation Technician I position that plaintiff was asked to consider. The job description indicated the physical demands of the job regularly required, standing and walking; frequent stooping, kneeling, crouching and crawling; frequent lifting and/or moving up to 20 pounds and occasional lifting and/or moving up to 50 pounds.
16. From January 17, 2006 to March 2, 2006, plaintiff was asked to apply or send resumes for the positions:
 Customer Service Representative at Overton's Corporate Center, Office Personnel at Saturn of Greenville, General Office at Radio Station in Greenville, CBS Paraprofessionals Coordinated Health Services at Washington, Administrative Assistant, Bank Teller, Customer Service at Food Lion, Customer Service at Family Dollar, Drive Thru Attendant at Burger King, Drive Thru Attendant at Hardees, Cashier Customer Service at CVS Pharmacy, Customer Service at Walgreen's Pharmacy, Customer Service/Counter Attendant at Handy Mart, Front Counter Attendant at Holiday Inn Express, Customer Service Associate at Eckerd Pharmacy, Cracker Barrel, Customer Service/Cashier Position Lowes, Front Desk at One Price Dry Cleaners, Customer Service/Cashier at Home Depot, Customer Service /Cashier at Fred's Food Club, Customer Service/Cashier at Family Dollar, Cashier Drive Thru at McDonalds, Front Desk Clerk at Jameson Inn, Receptionist at Kia of Greenville, and others.
17. On March 6, 2006, plaintiff presented to Dr. Miller, an orthopedic specialist, for an authorized medical consultation. Dr. Miller further limited plaintiff's work restrictions from eight hours a day to part-time, four hours a day, sedentary work, allowing plaintiff to rotate sitting and standing during the four-hour period.
18. On March 7, 2006, plaintiff met with Cynthia Tyson at JobLink and gave her the part-time four hours a day sedentary work note from Dr. Miller. According to plaintiff, Ms. *Page 10 
Tyson gave plaintiff a new list of jobs that she had already prepared without regard to the new increased work restrictions.
19. After March 6, 2007, plaintiff documented that Cynthia Tyson recommended the following jobs through June 7, 2006 as suitable, given plaintiff's four hour sedentary work restrictions:
 Copy Editor at The Daily Reflector, Customer Service Representative at James Insurance Agency, Bank Teller at Bank of America, Patient Services Representative at Orthopaedics East, Front Desk Clerk, Part time Bank Teller at RBC Centura, PT Associate at Sears Portrait Studio, Part Time Receptionist Trainee at City of Greenville, Sales Associate, Part Time Library Assistant, Peak Time Teller, PT Sales Clerk at Handy Mart, Sales Associate at The Pantry, PT Clerical, Visitor Operations, PT Front Desk Attendant, Community Support Paraprofessional, Child Nutrition Assistant at Pitt County Schools, Customer Service at Ace Paging, Administrative at Culligan Water, Tech at Doctors Vision Center, Customer Service at The Telephone Connection, Clerk/Balancing Specialist at East Carolina Bank, Retail Sales at ABC Phones, Part Time Bank Teller at Cooperative Bank, General Office Work, Office Coordinator at Tire and Automotive Business, PT Retail Sales Associate at Atlantic Wireless, Customer Service Representative at Convergys, Consumer Solutions Representative at Sprint, One Hour Photo Specialist at Walgreens, Customer Service Associate at CVS, Master Control Operator, Receptionist at Vector Marketing, Cashier at Zaxby's Restaurant, Office Assistant at Clayton Homes, Leasing Assistant at Self Storage and Receptionist.
20. The Full Commission finds that Ms. Tyson did not consistently comply with the requirements of the Industrial Commission Guidelines for the Use of Rehabilitation Professionals. Specifically, Ms. Tyson did not provide plaintiff with suitable job leads and continued to have unrealistic expectations for plaintiff.
21. Following the Order suspending plaintiff's temporary total disability compensation filed on January 10, 2006, plaintiff petitioned Special Deputy Commissioner Layla T. Santa Rosa on April 18, 2006 to order defendants to immediately reinstate temporary total *Page 11 
disability benefits. Plaintiff offered evidence that she had completed her term at Martin Enterprises as well as documentation of the increased work restrictions by plaintiff's treating physician, limiting her to part-time work. Also, the Special Deputy Commissioner was notified that the Vocational Consultant, Cynthia Tyson with VocMed, Inc., was not considering plaintiff's restrictions in identifying suitable job leads.
22. On May 1, 2006, defendants responded to plaintiff's Motion to Reinstate Disability Compensation. Defendants represented that based upon Ms. Tyson's reports, plaintiff did not successfully complete the Martin Enterprises vocational workshop. Defendants further alleged, based upon the VocMed, Inc. reports and Cynthia Tyson's opinion, that plaintiff was not fully compliant with the job search. On May 31, 2006, Executive Secretary Tracey Weaver filed an Order denying plaintiff's motion from which plaintiff timely filed a Form 33 Request for Hearing appealing the Executive Secretary's Order.
23. Plaintiff continued to keep her scheduled appointments with Cynthia Tyson of VocMed, Inc. and attempted to cooperate with job leads offered by Ms. Tyson whether suitable or not, from January 10, 2006 to June 7, 2006. On June 7, 2006, plaintiff was scheduled to meet with Ms. Tyson at JobLink. When Ms. Tyson did not keep the appointment, plaintiff called her and Ms. Tyson informed plaintiff that she had been told to close her file and they would not be meeting anymore. Plaintiff testified that defendants no longer offered plaintiff vocational services after that point.
24. Considering the testimony of all witnesses and documents in evidence, the Full Commission finds that plaintiff is credible and that she has fully complied with all reasonable vocational rehabilitation requests after the January 10, 2006 Order of the Industrial Commission. *Page 12 
25. Defendants have offered no expert vocational opinion that they have located any suitable jobs, which plaintiff has refused. Other than the Coordinated Health Services position, defendants have offered no evidence of the wages, benefits, or physical requirements of any position.
26. By August 9, 2006, plaintiff's condition worsened to the point that she was unable to sleep, work, or do daily activities and was ready to pursue the recommended surgical intervention to seek pain relief. At that time, Dr. Miller released plaintiff completely from work until after surgery as his office sought pre-approval for the left-sided sacroiliac joint fusion surgery. Dr. Miller testified that plaintiff's total disability as of August 9, 2006 was related to plaintiff's workers' compensation claim for which he had provided treatment.
27. Also on August 9, 2006, Dr. Miller prescribed a TempurPedic mattress for plaintiff. Dr. Miller opined that although the prescribed Tempurpedic mattress would not effect a cure, it would provide relief related to plaintiff's condition. Dr. Miller further testified that the Tempurpedic mattress is used to contour as efficiently as possible to plaintiff's body size and shape to accommodate her while sleeping and to decrease pain while she is in bed.
28. On September 6, 2006, Dr. Miller signed a NCIC Form 28U acknowledging plaintiff was completely released from work on August 9, 2006, while he was seeking pre-approval from the carrier for the left-sided sacroiliac joint fusion. At his deposition on September 7, 2007, Dr. Miller confirmed it was his signature as plaintiff's authorized treating physician on the release form.
29. On September 8, 2006, the NCIC Form 28U along with Dr. Miller's out-of-work note dated August 9, 2006 was provided to the North Carolina Industrial Commission. On *Page 13 
November 22, 2006, Executive Secretary Tracey Weaver ordered defendants to immediately reinstate temporary total disability benefits effective September 8, 2006 and ongoing.
30. Defendants reinstated plaintiff's temporary total disability benefits paying plaintiff her accrued disability benefits for the 26 week period from September 8, 2006 through March 8, 2007, less a credit for overpayment from the approved Form 24. Plaintiff continues to receive ongoing temporary total disability benefits.
31. Dr. Miller opined to a reasonable degree of medical certainty that a three level fusion stresses the segments below the fusion, which are the sacroiliac joints. In plaintiff's case both the left and right side were stressed. Dr. Miller testified that regarding the SI joint injections, they are used both as a type of treatment, in the hopes that any improvement would be permanent, but in cases such as plaintiff's where the improvement was not permanent, the injections serve as a diagnostic test to determine sacroiliac joint problems.
32. After the series of SI joint injections, Dr. Miller performed an authorized left sacroiliac joint fusion on June 25, 2007. Since the fusion, plaintiff has continued under the care of Dr. Miller. Dr. Miller opined that plaintiff would not be at maximum medical improvement related to the June 27, 2007 procedure until four to six months after the procedure. At that time, assuming plaintiff had a normal or expected recovery, Dr. Miller would proceed with the right SI joint fusion.
33. Following the right-sided SI joint fusion, plaintiff would undergo the same recovery period as she underwent for the left-sided joint fusion. Dr. Miller further opined that both the left-sided SI joint fusion performed on June 25, 2006 and the recommended right-sided SI joint fusion are both causally related to plaintiff's workers' compensation claim as is plaintiff's current total disability. *Page 14 
34. As of the hearing before the Deputy Commissioner, plaintiff remained unable to return to work. In addition, Dr. Miller would not estimate a rating for either plaintiff's left or right side until later in her recovery.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On March 26, 1997, plaintiff sustained an admittedly compensable injury by accident to her back arising out of and in the scope of her employment. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has complied with the vocational services that defendants provided. N.C. Gen. Stat. § 97-25.
3. "Suitable employment" means employment in the local labor market or self-employment which is reasonably attainable and which offers an opportunity to restore the worker as soon as possible and as nearly as practicable to pre-injury wage, while giving due consideration to the worker's qualifications (age, education, work experience, physical and mental capacities), impairment, vocational interests, and aptitudes. No one factor shall be considered solely in determining employment. Defendants have not established through any competent or credible evidence that plaintiff is capable of returning to suitable and gainful employment. N.C. Gen. Stat. § 97-32.
4. As a result of her compensable injury on March 26, 1997, plaintiff is entitled to temporary total disability compensation at a rate of $310.38 from January 25, 2006 through *Page 15 
September 7, 2006 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
5. As a result of her compensable injury by accident on March 26, 1997, plaintiff is entitled to receive all medical treatment related to her compensable injury by accident incurred or to be incurred that would reasonably effect a cure or provide relief or lessen plaintiff's period of disability, including the Tempurpedic mattress prescribed by Dr. David Miller that is reasonable and necessary to provide relief for plaintiff's chronic back pain. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fees hereinafter approved, plaintiff is entitled to reinstatement of and defendants shall pay to plaintiff temporary total disability benefits at the rate of $310.38 per week, beginning January 25, 2006 through September 7, 2006 and continuing until further Order of the Commission.
2. Defendants shall pay for all reasonably related medical expenses incurred or to be incurred by plaintiff for treatment related to her back injury that tends to effect a cure or provide relief. This shall include the purchase of a "Rhapsody" Tempurpedic Mattress full set or similar product as selected by plaintiff from Fred's Beds.
5. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
 6. Defendants shall bear the costs. *Page 16 
 ORDER
As a dispute exists regarding the voracity of the vocational rehabilitation opinions, the parties shall submit stipulated rehabilitation records to the Industrial Commission with 45 days of the date of this Order.
This the ___ day of June 2008.
S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ BUCK LATTIMORE COMMISSIONER